JASON H. SUNSHINE (NY SBN: 5652474)
*jsunshine@pessahgroup.com*
MAURICE D. PESSAH (Cal SBN: 275955; *Pro Hac Vice* Pending)
*maurice@pessahgroup.com*
**PESSAH LAW GROUP, PC**
661 N Harper Ave., Suite 208
Los Angeles, CA 90048
Tel. (310) 772-2261

*Attorneys for Plaintiff*

DREW AUSTIN SPECKMAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DREW AUSTIN SPECKMAN, in both his personal capacity and as sole incorporator of RapStudy, Inc, a Delaware Corporation.<br><br>                                        Plaintiff,<br><br>-against-<br><br>COSIMO FABRIZIO, an individual; ADRIAN LEE, an individual; REZA MADHAVAN, an individual, and DOES 1-50, inclusive;<br><br>                                        Defendants. | Civil Action No.  3:21-CV-0602 (DNH/ML)<br><br>**COMPLAINT FOR:**<br>**(1) DECLARATORY RELIEF;**<br>**(2) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (28 U.S.C. § 1030);**<br>**(3) CONVERSION;**<br>**(4) BREACH OF CONTRACT – FABRIZIO NDA;**<br>**(5) BREACH OF CONTRACT – MADHAVAN NDA;**<br>**(6) BREACH OF CONTRACT – LEE NDA;**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

PLAINTIFF DREW SPECKMAN ("Plaintiff") brings this Complaint for damages and equitable relief against Defendants COSIMO FABRIZIO, ADRIAN LEE, and REZA MADHAVAN, and DOES 1-50 based on the following allegations:

### INTRODUCTION

1.     This action involves RapStudy, Inc. ("RapStudy"), a children's educational platform that turns pop songs into a teaching tool by linking the melodies of popular songs with new, educational lyrics.

2.     Plaintiff Drew Speckman ("Plaintiff") is the Founder, CEO and Sole Incorporator of RapStudy, a Delaware corporation with its principal place of business in the State of New York.



A true and correct copy of rapstudy.com/about, identifying Plaintiff as "CEO and Co-Founder" of the Company. (last accessed, May 24, 2021)

-2-

3.      As elaborated herein, Defendants Cosimo Fabrizio, Adrian Lee, and Reza Madhavan intentionally and unlawfully usurped control of RapStudy from Plaintiff by:

a. Intentionally and unlawfully locking him out of the Company's email, file storage, code repository, and bank account;

b. Breaching non-disclosure and confidentiality agreements with Plaintiff acknowledging Plaintiff's ownership interest in RapStudy and its property;

c. Jeopardizing Plaintiff's ongoing business interests and future prospects,

d. Viciously conspiring to deprive Plaintiff unlawfully of his rightful stake in his own Company after three-plus years of relentless dedication, risk-taking, and momentum.

e. Depriving Plaintiff of his ownership interest in the Company and its property.

4.      Due to the unlawful actions of Defendants, Plaintiff has been unable to fulfill critical responsibilities as CEO, including: (1) negotiating contracts with school districts for use of the RapStudy platform, (2) securing insurance contracts for RapStudy, (3) advertising and promoting RapStudy, (4) managing RapStudy's finances, (5) responding to emails regarding Company business, (6) updating and managing RapStudy's code, and (7) taking any other actions with respect to RapStudy's software and business affairs.

5.      Plaintiff now seeks a declaratory judgment that Plaintiff is the CEO, owner and Sole Incorporator of RapStudy and its property, and that Plaintiff's ownership is exclusive, binding, and enforceable.

6.      Plaintiff files this lawsuit to restore his rightful control over the Company, to reverse the actions unlawfully taken by Defendants, and to assert money damages against

COMPLAINT

Defendants for their conversion of the Company, breach of non-disclosure agreements, violations of federal computer hacking statutes, and other grounds asserted forthwith.

## PARTIES

7.     Plaintiff Drew Austin Speckman is, and at all times relevant was, a citizen of New York residing in Tompkins County, New York.

8.     Defendant Cosimo Fabrizio is, and at all times relevant was, a citizen of New York residing in Tompkins County, New York.

9.     Defendant Adrian Lee is, and at all times relevant was, a citizen of New York residing in Tompkins County, New York.

10.     Defendant Reza Madhavan is, and at all times relevant was, a citizen of New York residing in Tompkins County, New York.

11.     At all relevant times, each Defendant was the agent of the other Defendants and was at all times acting within the purpose and scope of such agency. Moreover, in committing the acts and omissions asserted herein, Defendants, and each of them, were acting in concert together, in the course and scope of their respective relationship with each other, whether as employees, agents, representatives, independent contractors, providers, service providers, as agents or representatives of each other, respectively, or as joint venturers, co-conspirators or otherwise.

12.     Plaintiff is presently unaware of the true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues said defendants by fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when the same have been ascertained. Upon information and belief, Plaintiff alleges that each of the fictitiously named Defendants is responsible in some manner for the

occurrences, acts and omissions alleged herein and the Plaintiff's damages were proximately caused by their conduct.

## JURISDICTION

13.     Plaintiff brings this action to recover damages, costs of suit, and injunctive relief arising from Defendants' violations of the Computer Fraud and Abuse Act, 28 U.S.C. § 1030.

14.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the case arises under the Constitution, laws, or treaties of the United States.

15.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims form part of the same case or controversy as his federal claims under Article III of the United States Constitution.

## VENUE

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district (28 U.S.C. § 1391(b)(2) and all Defendants reside in this judicial district (28 U.S.C. § 1391(b)(1)).

## FACTUAL ALLEGATIONS

### A.  Plaintiff's Founding of RapStudy

17.     Plaintiff Drew Speckman is the creator of "RapStudy" a children's educational platform that turns pop songs into a teaching tool by linking the melodies of popular songs with educational lyrics. Lessons on a broad range of topics—from the electoral college to the scientific method—are set to chart-topping hits from artists such as Ariana Grande or Billie Eilish.

18.     RapStudy is rapidly expanding. With hundreds of songs in its catalogue and growing interest from school districts, RapStudy is a business with enormous growth prospects and wide interest from investors and educators. The Company has over three hundred educational partners and is used in over twenty-five schools.

19.     Plaintiff Drew Speckman founded RapStudy in 2018 while enrolled at Cornell University. On November 29, 2019, Plaintiff filed a Certificate of Incorporation for RapStudy with the Delaware Secretary of State, using his own funds to pay the filing fee. Attached hereto as **Exhibit A** is a true and correct copy of the Certificate of Incorporation. The Certificate of Incorporation established "RapStudy, Inc." as a Delaware corporation, with Plaintiff as RapStudy's "sole incorporator." Pursuant to the Certificate of Incorporation, a director may only be removed from office "by the affirmative vote of the holders of a majority of the voting power of all then-outstanding shares of capital stock of the corporation[.]" Apart from this Certificate, no other RapStudy documents have been filed with the Delaware Secretary of State.

20.     Plaintiff is the primary financier of RapStudy and, until he was unlawfully ousted from access to the Company, managed its day-to-day business operations. Using his personal funds, Plaintiff paid for the Delaware incorporation fee, the "rapstudy.com" domain name, and the "rapstudy learn lyrically" trademark. Plaintiff also opened RapStudy's bank account and is listed as CEO on all corporate paperwork and on RapStudy's website.

21.     In or around October of 2018, Plaintiff approached Defendant Cosimo Fabrizio for technical assistance with the RapStudy program. On October 28, 2018, Fabrizio, in exchange for good and valuable consideration, entered into a non-disclosure agreement identifying Plaintiff as the "Idea Originator" for RapStudy and Fabrizio as a "Consultant." Attached hereto as **Exhibit B** is a true and correct copy of the Fabrizio Non-Disclosure Agreement (the "Fabrizio NDA"). The

Agreement covers confidential information related to the business, including, *inter alia*, proprietary computer code, business processes and, customer information, intellectual property, service marks, marketing, and development information., accounting information.

> Confidential Information will remain the exclusive property of the Idea Originator and will only be used by the Consultants for the Permitted Purpose. The Consultants will not use the Confidential Information for any purpose that might be directly or indirectly detrimental to the Idea Originator or any associated affiliates or subsidiaries

(*See* **Exh. B** , ¶ 4)

22.    On November 5 and 12, 2019, Plaintiff entered into a similar contracts, specifically identifying RapStudy, with Defendants Lee and Madhavan, respectively, whom Plaintiff hired as part-time employees. Pursuant to these contracts, Lee and Madhavan acknowledged Plaintiff's right to "use any and/or all ideas and/or information from any and/or all related conversations and/or communications—past and/or potentially forthcoming—for any and/or all RapStudy-related reasons." Moreover, the contracts provided that "any and/or all materials produced…are the **sole property** of [Plaintiff.]" (emphasis added) Attached hereto as **Exhibit C** is a true and correct copy of the fully executed November 5, 2019 non-disclosure agreement between Plaintiff and Defendant Lee (the "Lee NDA"). Attached hereto as **Exhibit D** is a true and correct copy of the fully executed November 12, 2019 non-disclosure agreement between Plaintiff and Defendant Madhavan (the "Madhavan NDA").

COMPLAINT

**B.** **Defendants' Attempts to Unlawfully Oust Plaintiff from RapStudy and Usurp Control of the Company**

23.     Plaintiff was involved in a brief, consensual relationship with RapStudy team member Claire Choi in early-Fall 2020. Choi disclosed the relationship to Fabrizio on April 25, 2021, and to Defendants Adrian Lee and Reza Madhavan in a series of conversations between April 25 and 26, 2021.

24.     On or about May 3, 2021, Plaintiff received a document entitled "Notice of Misconduct" signed by Defendants Lee, Madhavan, Fabrizio, and RapStudy employee Jake McEvoy (collectively, the "Signatories"). The Notice alleged that Plaintiff: (1) failed to separate his work life and private life, (2) exercised poor judgment, and (3) violated Defendants' trust. Neither the Notice nor Choi alleged any unlawful conduct on the part of Plaintiff.

25.     The Signatories unjustifiably demanded that Plaintiff take a leave of absence from RapStudy until August 8, 2021 and indicated that they were "not comfortable" with Plaintiff remaining CEO upon his return. The Signatories did not articulate any legal basis for their request that Plaintiff take a leave of absence and step down as CEO. To date, no neutral investigation has been conducted into Plaintiff's consensual relationship with Choi, no evidence of wrongdoing has been furnished, and Defendants have disregarded all manner of proper corporate formality.

26.     On May 11, 2021, a mere eight days after receiving the "Notice of Misconduct," Plaintiff received a Google alert that his RapStudy Gmail account and Google Drive passwords had been changed, along with the recovery email.

27.     Without access to these files, Plaintiff cannot discharge his duties as CEO or complete corporate formalities as sole incorporator of the company.

28.     Aside from Plaintiff, Defendants are the **only** individuals with the administrator credentials needed to change account information in the RapStudy Google Drive. By restricting Plaintiff's access to the RapStudy Google Drive, Defendants have seized and withheld property owned by Plaintiff. Such actions are in direct violation of the non-disclosure agreements signed by Defendants acknowledging Plaintiff's **exclusive ownership** of all RapStudy materials and information.

29.     Plaintiff is informed and believes, and based thereon alleges, that Defendants have neglected to carry out critical functions and that Defendants are irreparably harming RapStudy's ongoing business and future prospects.

30.     On August 3, 2020, Plaintiff opened a corporate checking account for RapStudy at Tompkins Trust Company (the "Bank Account"), depositing his personal funds in the Account for initial capitalization of the Company. All paperwork submitted to the bank listed Plaintiff as the account holder and included Plaintiff's personal address as the Company's mailing address. On September 4, 2021, Plaintiff added Fabrizio as a joint signatory to the Bank Account.

31.     On May 13, 2021 at around 4:40 pm EST, Plaintiff attempted to access the Bank Account and received an error message that his login information was wrong. Plaintiff then called the Ithaca, New York branch of the bank and was told that his name was no longer on the Bank Account. Later that day, Plaintiff called the Tompkins Trust Digital Banking Assistance line and asked for more information regarding his restricted access. Once again, Plaintiff was told he was not on the Bank Account and would not be provided any further information.

32.     Upon information and belief, Defendant Fabrizio—the only other signatory to the Bank Account—unlawfully removed Plaintiff from the Bank Account without Plaintiff's consent.

33.     Defendant Fabrizio took further action to cut Plaintiff out of the Company by revoking his access to the RapStudy GitHub repositories containing the platform's source code. On May 11, 2021, Plaintiff received an email from GitHub with the subject line "You've been removed from the @rapstudyorganization[.]" The body of the email reads, in its entirety, "You've been removed as a collaborator on rapstudy's repositories. / You no longer have access to the following repositories: / rapstudy.com/rapstudy-web[.]"

34.     Since being unlawfully locked out of RapStudy, Plaintiff has been unable to: (1) negotiate contracts with school districts for use of the RapStudy platform, (2) secure insurance contracts for RapStudy, (3) advertise and promote RapStudy, (4) manage RapStudy's finances, (5) respond to emails regarding Company business, (6) update and manage RapStudy's code or (7) take any other actions with respect to RapStudy's software and business affairs.

35.     Plaintiff now brings this Complaint for damages and equitable relief against Defendants Fabrizio, Lee and Madhavan.

36.     On May 12, 2021, Plaintiff sent a letter to Fabrizio putting him on notice that his attempts to usurp RapStudy from Plaintiff were unlawful and deeply harmful to the Company. The May 12 Letter demanded that Fabrizio "reverse any actions taken by you or at your direction to unlawfully restrict our client's access to the Company and files[.]" (May 12 Letter)

37.     On May 13, 2021, Plaintiff sent another letter to Fabrizio advising that his actions had badly harmed Plaintiff's "efforts to recruit educators, verify and maintain user accounts, correspond with partners, obtain licensing agreements for important intellectual property, and secure insurance contracts on behalf of RapStudy[.]" (May 13 Letter)

## FIRST CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT)

## (Against All Defendants and DOES 1-50)

38.     Plaintiff re-alleges and incorporates by reference all paragraphs above, as if fully set forth herein.

39.     "In the case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration…Any such declaration shall have the force and effect of a final judgment or decree[.]" 28 U.S.C. § 2201.

40.     Plaintiff is the sole incorporator, CEO, and exclusive owner of RapStudy, Inc.

41.     As alleged herein, Defendants have violated Plaintiff's rights as RapStudy's owner, incorporator, and CEO by, *inter alia*, unlawfully locking Plaintiff out of the RapStudy Google drive, GitHub repository, and Bank Account.

42.     Plaintiff hereby seeks a declaratory judgment affirming Plaintiff's status as RapStudy's (1) sole incorporator, (2) CEO, and (3) exclusive owner.


## SECOND CLAIM FOR RELIEF

## (COMPUTER FRAUD AND ABUSE ACT, 28 U.S.C. § 1030)

## (Against All Defendants and DOES 1-50)

43.     Plaintiff re-alleges and incorporates by reference all paragraphs above, as if fully set forth herein.

44.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), imposes liability upon any individual who "knowingly and with an intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value[.]" 18 U.S.C. § 1030(a)(4).

45.     Each Defendant signed a written agreement acknowledging Plaintiff's **<u>exclusive ownership</u>** of RapStudy property and **<u>limiting Defendants' use of such property</u>**. Nevertheless, Defendants unlawfully locked Plaintiff out of the Google drive and GitHub repository, blocking Plaintiff's access to information he owns in brazen violations of the non-disclosure agreements.

46.     Defendants' actions were taken with the intend to defraud Plaintiff and in excess of their authorized access to the RapStudy files and computers.

### THIRD CLAIM FOR RELIEF

### (CONVERSION)

### (Against All Defendants and DOES 1-50)

47.     Plaintiff re-alleges and incorporates by reference all paragraphs above, as if fully set forth herein.

48.     There are two key elements of conversion under New York law: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 20 N.Y.3d 228 (2012).

49.     Plaintiff's exclusive ownership of the Company constitutes a possessory right or interest in that Plaintiff owns the Company itself and everything arising therefrom, including, but

not limited to proprietary code, trademarks, trade secrets, cloud storage files, emails, customer and vendor lists, business processes, and intellectual property of all types.

50. Defendants interfered with Plaintiff's possession when they deprived Plaintiff of his ownership interest in RapStudy property by locking Plaintiff out of: (1) the RapStudy Google Drive and Gmail, (2) the RapStudy GitHub repository, and (3) the RapStudy Bank Account. In doing so, Defendants have completely deprived Plaintiff of access to RapStudy files, data, emails, intellectual property, proprietary code, and trade secrets, thereby preventing Plaintiff from running the Company he worked three years to build.

51. As a direct and proximate result of the foregoing acts by Defendants, Plaintiff has been damaged in an amount to be proved at trial.

52. Plaintiff is also entitled to orders and judgment of this Court compelling Defendants to restore Plaintiff's access to the RapStudy accounts, including the RapStudy Google Drive and Gmail, GitHub Repository, and Bank Account.

## **FOURTH CLAIM FOR RELIEF**

### **(BREACH OF CONTRACT – FABRIZIO NDA)**

### **(Against Defendant Fabrizio and DOES 1-50)**

53. Plaintiff re-alleges and incorporates by reference all paragraphs above, as if fully set forth herein.

54. Defendant Fabrizio and Plaintiff Speckman, for valuable consideration, entered into a valid and enforceable contract on October 28, 2018. The Fabrizio NDA states that Plaintiff is the exclusive owner of all Confidential Information, defined as "data and information relating to the business and management of [RapStudy]" including, inter alia, customer information,

intellectual property, marketing and development information, business operations, product information, production processes, service information, proprietary computer code, computer technology, and accounting information. (Exh. A, ¶¶ (3(a)-3(k))

55.     Paragraph 4 states "Confidential Information will remain the exclusive property of [Plaintiff] and will only be used by the Consultant [] for the Permitted Purpose. The Consultants will not use the Confidential Information for any purpose that might be directly or indirectly detrimental to [Plaintiff] or any associated affiliates or subsidiaries." (Exh. A, ¶ 4)

56.     Fabrizio "acknowledge[s] and agree[s] that all rights, title, and interest in any Confidential Information will remain the exclusive property of [Plaintiff]. Accordingly, [Fabrizio] specifically agree[s] and acknowledge[s] that the [Fabrizio] will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trademarks or trade names." (Exh. A, ¶ 12)

57.     Plaintiff performed all its obligations under the Fabrizio NDA or is excused from performance.

58.     Defendant Fabrizio breached the Fabrizio NDA by, *inter alia*, locking Plaintiff out of: (1) misappropriating and usuring Plaitniff's Company-related files and data, (2) the Plaintiff's Google drive, (3) Plaintiff's GitHub repository, and (4) the RapStudy Bank Account. In doing so, Defendant has deprived Plaintiff of his possession and use of RapStudy property including customer lists, business documents, intellectual property, funds, and proprietary source code.

59.     Defendant Fabrizio's unlawful acts violate the express terms of the Fabrizio NDA, acknowledging Plaintiff's **exclusive ownership** of Company information and materials, and limiting Defendant's use of the same.

60.     As a direct and proximate result of the foregoing breach of contract by Defendant Fabrizio, Plaintiff has been damaged in an amount to be proved at trial.

## FIFTH CLAIM FOR RELIEF

### (BREACH OF CONTRACT – MADHAVAN NDA)

### (Against Defendant Madhavan and DOES 1-50)

61.     Plaintiff re-alleges and incorporates by reference all paragraphs above, as if fully set forth herein.

62.     Defendant Reza Madhavan and Plaintiff Speckman, for valuable consideration, entered into a valid and enforceable contract on November 12, 2019. The Madhavan NDA states that "any and/or all materials produced—past or potentially forthcoming—by MADHAVAN, and/or discussed with MADHAVAN, are the sole property of Speckman[.]" (Exh. C)

63.     Plaintiff performed all its obligations under the Madhavan NDA or is excused from performance.

64.     Defendant Madhavan breached the Madhavan NDA by, *inter alia*, locking Plaintiff out of the RapStudy Google drive and RapStudy's GitHub repository. In doing so, Defendant has deprived Plaintiff of his possession and use of RapStudy property including customer lists, business documents, intellectual property, and proprietary source code.

65.     Defendant Madhavan's unlawful acts violate the express terms of the Madhavan NDA, acknowledging Plaintiff's **exclusive ownership** of Company information and materials, and limiting Defendant's use of the same.

66.     As a direct and proximate result of the foregoing breach of contract by Defendant Madhavan, Plaintiff has been damaged in an amount to be proved at trial.

## SIXTH CLAIM FOR RELIEF

### (BREACH OF CONTRACT – LEE NDA)

### (Against Defendant Lee and DOES 1-50)

67.     Plaintiff re-alleges and incorporates by reference all paragraphs above, as if fully set forth herein.

68.     Defendant Adrian Lee and Plaintiff Speckman, for valuable consideration, entered into a valid and enforceable contract on or about November 6, 2019. The Lee NDA states that "and and/or all materials produced—past and/or potentially forthcoming—by LEE and/or discussed with LEE, are the sole property of SPECKMAN[.]" (Exh. B)

69.     Plaintiff performance all its obligations under the Lee NDA or is excused from performance.

70.     Defendant Lee breached the Lee NDA by, *inter alia*, locking Plaintiff out of the RapStudy Google drive and RapStudy's GitHub repository. In doing so, Defendant has deprived Plaintiff of his possession and use of RapStudy property including customer lists, business documents, intellectual property, and proprietary source code.

71.     Defendant Lee's unlawful acts violate the express terms of the Lee NDA, acknowledging Plaintiff's **exclusive ownership** of Company information and materials, and limiting Defendant's use of the same.

72.     As a direct and proximate result of the foregoing breach of contract by Defendant Madhavan, Plaintiff has been damaged in an amount to be proved at trial.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

-16-

1.      For a declaratory judgment affirming Plaintiff's status as RapStudy's (1) sole

incorporator, (2) CEO, and (3) exclusive owner.

2.      For damages in an amount to be proven at trial;

3.      For incidental and consequential damages according to proof;

4.      For an award of exemplary and punitive damages against defendants in an amount

to be proved at trial;

5.      For all statutory penalties authorized by law;

6.      For restitution of all wrongfully acquired amounts and disgorgement of all ill-gotten

profits, in an amount according to proof;

7.      For a temporary, preliminary, and permanent injunction enjoining Defendants and

all persons or entities acting in concert with Defendants from directly or indirectly restricting

Plaintiff's access, and ordering Defendants and all persons acting in concert with Defendants to

restore Plaintiff's access to: (1) the RapStudy Google drive, (2) the RapStudy GitHub repository,

(3) the RapStudy Bank Account, and (4) any other RapStudy accounts.

8.      For all costs of suit incurred herein;

9.      For prejudgment and postjudgment interest at the maximum legal rate; and

10.     For such other relief as the Court may deem proper.

COMPLAINT

Dated: May 24, 2021                    PESSAH LAW GROUP, PC


By: ___/s/Jason Sunshine_____

Maurice D. Pessah  (*pro hoc vice* pending)

Jason Sunshine

Attorneys for Plaintiff

DREW AUSTIN SPECKMAN

COMPLAINT

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff demands a trial by jury.

Dated: May 24, 2021                         PESSAH LAW GROUP, PC

By:   /s/Jason Sunshine

Maurice D. Pessah

Jason Sunshine

Attorneys for Plaintiff

DREW AUSTIN SPECKMAN

COMPLAINT

**EXHIBIT A**

# CERTIFICATE OF INCORPORATION

## OF

## RAPSTUDY INC.

## A DELAWARE CORPORATION

The undersigned, a natural person (the "**Sole Incorporator**"), for the purpose of organizing a corporation to conduct the business and promote the purposes hereinafter stated, under the provisions and subject to the requirements of the laws of the State of Delaware hereby certifies that:

## I.

The name of this corporation is RapStudy Inc.

## II.

The registered office of the corporation in the State of Delaware shall be 16192 Coastal Highway, City of Lewes, County of Sussex, Zip Code of 19958.  The name of the registered agent of the corporation in the State of Delaware at such address is Harvard Business Services, Inc.

## III.

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the Delaware General Corporation Law.

## IV.

This corporation is authorized to issue only one class of stock, to be designated Common Stock. The total number of shares of Common Stock presently authorized is 5,000 (five thousand), each having a par value of $0.0001.

## V.

**A.**     The management of the business and the conduct of the affairs of the corporation shall be vested in its Board of Directors.  The number of directors which shall constitute the whole Board of Directors shall be fixed by the Board of Directors in the manner provided in the Bylaws.

**B.**     Directors shall be elected at each annual meeting of stockholders to hold office until the next annual meeting.  Each director shall hold office either until the expiration of the term for which elected or appointed and until a successor has been elected and qualified, or until such director's death, resignation or removal.  No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.

**C.**     No person entitled to vote at an election for directors may cumulate votes to which such person is entitled unless required by applicable law at the time of such election. During such time or times that applicable law requires cumulative voting, every stockholder entitled to vote at an election for directors may cumulate such stockholder's votes and give one candidate a number of votes equal to the number of

1

directors to be elected multiplied by the number of votes to which such stockholder's shares are otherwise entitled, or distribute the stockholder's votes on the same principle among as many candidates as such stockholder desires.  No stockholder, however, shall be entitled to so cumulate such stockholder's votes unless (A) the names of such candidate or candidates have been placed in nomination prior to the voting and (B) the stockholder has given notice at the meeting, prior to the voting, of such stockholder's intention to cumulate such stockholder's votes.  If any stockholder has given proper notice to cumulate votes, all stockholders may cumulate their votes for any candidates who have been properly placed in nomination. Under cumulative voting, the candidates receiving the highest number of votes, up to the number of directors to be elected, are elected.

     **D.**     Subject to any limitations imposed by applicable law, the Board of Directors or any director may be removed from office at any time, with or without cause, by the affirmative vote of the holders of a majority of the voting power of all then-outstanding shares of capital stock of the corporation entitled to vote generally at an election of directors.

     **E.**     The Board of Directors is expressly empowered to adopt, amend or repeal the Bylaws of the corporation.  The stockholders shall also have power to adopt, amend or repeal the Bylaws of the corporation; provided, however, that, in addition to any vote of the holders of any class or series of stock of the corporation required by law or by this Certificate of Incorporation, such action by stockholders shall require the affirmative vote of the holders of at least a majority of the voting power of all of the then-outstanding shares of the capital stock of the corporation entitled to vote generally in the election of directors, voting together as a single class.

     **F.**     Unless and except to the extent that the bylaws of the corporation shall so require, the election of directors of the corporation need not be by written ballot.

## VI.

     **A.**     The liability of the directors for monetary damages for breach of fiduciary duty as a director shall be eliminated to the fullest extent under applicable law.

     **B.**     To the fullest extent permitted by applicable law, the corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the corporation (and any other persons to which applicable law permits the Company to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise in excess of the indemnification and advancement otherwise permitted by such applicable law. If applicable law is amended after approval by the stockholders of this Article VI to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director to the corporation shall be eliminated or limited to the fullest extent permitted by applicable law as so amended.

     **C.**     Any repeal or modification of this Article VI shall only be prospective and shall not affect the rights or protections or increase the liability of any officer or director under this Article VI in effect at the time of the alleged occurrence of any act or omission to act giving rise to liability or indemnification.

## VII.

     The corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon the stockholders herein are granted subject to this reservation.

**VIII.**

The name and the mailing address of the Sole Incorporator is as follows:

     Drew Austin Speckman

     111 Dryden Rd, Apt 8K, Ithaca NY 14850


This Certificate has been subscribed as of November 20, 2019 by the undersigned who affirms that the statements made herein are true and correct.


                    Drew Austin Speckman
                    **DREW AUSTIN SPECKMAN**
                    Sole Incorporator

**EXHIBIT B**

# NON-DISCLOSURE AGREEMENT

**THIS NON-DISCLOSURE AGREEMENT (the "Agreement") dated this 28th day of October, 2018**

**BETWEEN:**

| IDEA ORIGINATOR | CONSULTANTS |
|---|---|
| Drew A. Speckman | Raymone Radi and Cosimo Fabrizio |
| _____ | _____ |
| (the "Idea Originator") | (the "Consultants") |

## BACKGROUND

**A.** The Consultants are currently or may be employed as employees for the Idea Originator. In addition to whatever role and responsibilities of a potential position(s) (the "Employment"), this Agreement also covers any position or responsibility now or later held with the Idea Originator.

**B.** The Consultants will receive from the Idea Originator, or develop on the behalf of the Idea Originator, Confidential Information as a result of the Employment (the 'Permitted Purpose').

**IN CONSIDERATION OF** and as a condition of the Idea Originator employing the Consultants and the Idea Originator providing the Confidential Information to the Consultants in addition to other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

## CONFIDENTIAL INFORMATION

**1.** All written and oral information and materials disclosed or provided by the Idea Originator to the Consultants under this Agreement constitute Confidential Information regardless of whether such information was provided before or after the date of this Agreement or how it was provided to the Consultants .

**2.** The Consultants acknowledge that in any position the Consultants may hold, in and as a result of the Consultants' employment by the Idea Originator, the Consultants will, or may, be making use of, acquiring or adding to information about certain matters and things which are confidential to the Idea Originator and which information is the exclusive property of the Idea Originator.

3. 'Confidential Information' means all data and information (including that which has been orated by Idea Originator and/or heard by Consultants, even if not via Idea Originator) relating to the business and management of the Idea Originator (regardless of whether said 'Confidential Information' has received patents, copyrights, trade secrets, or any other form of protection), including but not limited to, the following:

   a. 'Customer Information' which includes names of customers of the Idea Originator, their representatives, all customer contact information, contracts and their contents and parties, customer services, data provided by customers and the type, quantity and specifications of products and services purchased, leased, licensed or received by customers of the Idea Originator;

   b. 'Intellectual Property' which includes information relating to the Idea Originator's proprietary rights prior to any public disclosure of such information, including but not limited to the nature of the proprietary rights, production data, technical and engineering data, technical concepts, test data and test results, simulation results, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including patents, copyrights and trade secrets);

   c. 'Marketing and Development Information' which includes marketing and development plans of the Idea Originator, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Idea Originator which have been or are being discussed;

   d. 'Business Operations' which includes internal personnel and financial information of the Idea Originator, vendor names and other vendor information (including vendor characteristics, services and agreements), purchasing and internal cost information, internal services and operational manuals, external business contacts including those stored on social media accounts or other similar platforms or databases operated by the Idea Originator, and the manner and methods of conducting the Idea Originator's business;

   e. 'Product Information' which includes all specifications for products of the Idea Originator as well as work product resulting from or related to work or projects performed or to be performed for the Idea Originator or for clients of the Idea Originator, of any type or form in any stage of actual or anticipated research and development;

   f. 'Production Processes' which includes processes used in the creation, production and manufacturing of the work product of the Idea Originator including but not limited to, formulas, patterns, molds, models, methods, techniques, specifications, processes, procedures, equipment, devices, programs, and designs;

   g. 'Service Information' which includes all data and information relating to the services provided by the

Idea Originator, including but not limited to, plans, schedules, manpower, inspection, and training information;

h. 'Proprietary Computer Code' which includes all sets of statements, instructions or programs of the Idea Originator, whether in human readable or machine readable form, that are expressed, fixed, embodied or stored in any manner and that can be used directly or indirectly in a computer ('Computer Programs'); any report format, design or drawing created or produced by such Computer Programs; and all documentation, design specifications and charts, and operating procedures which support the Computer Programs;

i. 'Computer Technology' which includes all scientific and technical information or material of the Idea Originator, pertaining to any machine, appliance or process, including but not limited to, specifications, proposals, models, designs, formulas, test results and reports, analyses, simulation results, tables of operating conditions, materials, components, industrial skills, operating and testing procedures, shop practices, know-how and show-how;

j. 'Accounting Information' which includes, without limitation, all financial statements, annual reports, balance sheets, company asset information, company liability information, revenue and expense reporting, profit and loss reporting, cash flow reporting, accounts receivable, accounts payable, inventory reporting, purchasing information and payroll information of the Idea Originator; and

k. Confidential Information will also include any information that has been disclosed by a third party to the Idea Originator and is protected by a non-disclosure agreement entered into between the third party and the Idea Originator.

4. Except as otherwise provided in this Agreement, the Confidential Information will remain the exclusive property of the Idea Originator and will only be used by the Consultants for the Permitted Purpose. The Consultants will not use the Confidential Information for any purpose that might be directly or indirectly detrimental to the Idea Originator or any associated affiliates or subsidiaries.

5. The obligations to ensure and protect the confidentiality of the Confidential Information imposed on the Consultants in this Agreement and any obligations to provide notice under this Agreement will survive the expiration or termination, as the case may be, of this Agreement and those obligations will last indefinitely.

6. The Consultants may disclose any of the Confidential Information:

a. to such employees, agents, representatives and advisors of the Consultants that have a need to know for the Permitted Purpose provided that:

i. the Consultants have informed such personnel of the confidential nature of the Confidential Information;

    **ii.** such personnel agree to be legally bound to the same burdens of non-disclosure and non-use as the Consultants;

    **iii.** the Consultants agree to take all necessary steps to ensure that the terms of this Agreement are not violated by such personnel; and

    **iv.** the Consultants agree to be responsible for and indemnify the Idea Originator for any breach of this Agreement by its personnel.

**b.** to a third party where the Idea Originator has consented in writing to such disclosure; and

**c.** to the extent required by law or by the request or requirement of any judicial, legislative, administrative or other governmental body.

## AVOIDING CONFLICT OF OPPORTUNITIES

**7.** It is understood and agreed that any business opportunity relating to or similar to the Idea Originator's current or anticipated business opportunities coming to the attention of the Consultantsduring the Consultants employment is an opportunity belonging to the Idea Originator. Accordingly, the Consultants will advise the Idea Originator of the opportunity and cannot pursue the opportunity, directly or indirectly, without the written consent of the Idea Originator.

**8.** Without the written consent of the Idea Originator, the Consultants further agree not to:

    **a.** solely or jointly with others undertake or join any planning for or organization of any business activity competitive with the current or anticipated business activities of the Idea Originator; and

    **b.** directly or indirectly, engage or participate in any other business activities which the Idea Originator, in their reasonable discretion, determines to be in conflict with the best interests of the Idea Originator.

## NON-SOLICITATION

**9.** Any attempt on the part of the Consultants to induce others to leave the Idea Originator's employ, or any effort by the Consultants to interfere with the Idea Originator's relationship with their other employees and contractors would be harmful and damaging to the Idea Originator. The Consultants agree that from the date of this Agreement, the Consultants will not in any way, directly or indirectly:

    **a.** induce or attempt to induce any employee or contractor of the Idea Originator to quit their

employment or retainer with the Idea Originator;

**b.** otherwise interfere with or disrupt the Idea Originator's relationship with their employees and contractors;

**c.** discuss employment opportunities or provide information about competitive employment to any of the Idea Originator's employees or contractors; or

**d.** solicit, entice, or hire away any employee or contractor of the Idea Originator.

## NON-COMPETITION

**10.** Other than through employment with a bona-fide independent party, or with the express written consent of the Idea Originator, which will not be unreasonably withheld, the Consultants will not be directly or indirectly involved with a business which is in direct competition with the particular business line of the Idea Originator.

**11.** From the date of this Agreement, the Consultants will not divert or attempt to divert from the Idea Originator any business the Idea Originator had enjoyed, solicited, or attempted to solicit, from their customers, prior to termination or expiration, as the case may be, of the Employment.

## OWNERSHIP AND TITLE

**12.** The Consultants acknowledge and agree that all rights, title, and interest in any Confidential Information will remain the exclusive property of the Idea Originator. Accordingly, the Consultants specifically agree and acknowledge that the Consultants will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trademarks or trade names, notwithstanding the fact that the Consultants may have created or contributed to the creation of that Confidential Information.

**13.** The Consultants do hereby waive any moral rights that the Consultants may have with respect to the Confidential Information.

**14.** The Consultants agree to immediately disclose to the Idea Originator all Confidential Information developed in whole or in part by the Consultants during the term of their interactions with Idea Originator and/or Employment and to assign to the Idea Originator any right, title, or interest the Consultants may have in the Confidential Information. The Consultants agree to execute any instruments and to do all other things reasonably requested by the Idea Originator (including during and after the term of the Employment) in order to vest more fully in the Idea Originator all ownership rights in those items transferred by the Consultants to the Idea Originator.

## REMEDIES

**15.** The Consultants agree and acknowledge that the Confidential Information is of a proprietary and confidential nature and that any disclosure of the Confidential Information to a third party in breach of this Agreement cannot be reasonably or adequately compensated for in money damages and would cause irreparable injury to the Idea Originator. Accordingly, the Consultants agree that the Idea Originator is entitled to, in addition to all other rights and remedies available to Idea Originator at law or in equity, an injunction restraining the Consultants, any of Consultants' personnel, and any agents of the Consultants, from directly or indirectly committing or engaging in any act restricted by this Agreement in relation to the Confidential Information.

## RETURN OF CONFIDENTIAL INFORMATION

**16.** The Consultants agree that, upon request of the Idea Originator, or in the event that the Consultants cease to require use of the Confidential Information, or upon expiration or termination of this Agreement, or the expiration or termination of the Employment, the Consultants will turn over to the Idea Originator all documents, disks or other computer media, or other material in the possession or control of the Consultants that:

    **a.** may contain or be derived from ideas, concepts, creations, or trade secrets and other proprietary and Confidential Information as defined in this Agreement; and/or

    **b.** is connected with or derived from the Consultants' services to the Idea Originator.

## NOTICES

**17.** In the event that the Consultants are required in a civil, criminal, or regulatory proceeding to disclose any part of the Confidential Information, the Consultants will give to the Idea Originator prompt written notice of such request so the Idea Originator may seek an appropriate remedy or alternatively to waive the Consultants' compliance with the provisions of this Agreement in regards to the request.

**18.** If the Consultants lose or make unauthorized disclosure of any of the Confidential Information, the Consultants will immediately notify the Idea Originator and take all reasonable steps necessary to retrieve the lost or improperly disclosed Confidential Information, and/or to rectify the situation as is applicable, necessary, and sufficient.

**19.** Any notices or delivery required in this Agreement will be deemed completed when hand-delivered,

delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the parties at the addresses contained in this Agreement or as the parties may later designate in writing.

20. The addresses for any notice to be delivered to any of the parties to this Agreement are as follows:

    **a.** Drew A. Speckman

    *1475 Catamount Rd, Fairfield, CT 06824*

    **b.** Raymone Radi, Cosimo Fabrizio

    *109 Dryden Road, APT G1* , *75 Arnold Terrace, South Orange, NJ*

## REPRESENTATIONS

21. In providing the Confidential Information, the Idea Originator makes no representations, either expressly or impliedly as to its adequacy, sufficiency, completeness, correctness or its lack of defect of any kind, including any patent or trademark infringement that may result from the use of such information.

## TERMINATION

22. This Agreement will automatically terminate on the date that the Consultants' Employment with the Idea Originator terminates or expires, as the case may be. Except as otherwise provided in this Agreement, all rights and obligations under this Agreement will terminate at that time.

## ASSIGNMENT

23. Except where a party has changed its corporate name or merged with another corporation, this Agreement may not be assigned or otherwise transferred by either party in whole or part without the prior written consent of the other party to this Agreement.

## AMENDMENTS

24. This Agreement may only be amended or modified by a written instrument executed by both the Idea Originator and the Consultants.

## GOVERNING LAW

**25.** This Agreement will be construed in accordance with and governed by the laws of State of New York.

## ADDITIONAL PROVISIONS

**26.** Should a company (or any comparable business entity) be formed, in New York or otherwise, it will be subject to any and all provisions as outlined in this Agreement.

## GENERAL PROVISIONS

**27.** All subsequent copies of this Agreement are equally valid.

**28.** Any errors--grammatical, spelling, punctuation, tense, capitalization (including that which has been shown, throughout this Agreement, to indicate a particular party or stipulation, role, or anything else of comparable nature), or anything else of comparable nature, do not invalidate this Agreement or any specific function within it.

**29.** Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

**30.** The clauses, paragraphs, and subparagraphs contained in this Agreement are intended to be read and construed independently of each other. If any part of this Agreement is held to be invalid, this invalidity will not affect the operation of any other part of this Agreement.

**31.** The Consultants are liable for all costs, expenses, and expenditures including, and without limitation, the complete legal costs incurred by the Idea Originator in enforcing this Agreement as a result of any default of this Agreement by the Consultants.

**32.** The Idea Originator and the Consultants acknowledge that this Agreement is reasonable, valid, and enforceable. However, if a court of competent jurisdiction finds any of the provisions of this Agreement to be too broad to be enforceable, it is the intention of the Idea Originator and the Consultants that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable, bearing in mind that it is the intention of the Consultants to give the Idea Originator the broadest possible protection against disclosure of the Confidential Information.

**33.** No failure or delay by the Idea Originator in exercising any power, right, or privilege provided in this Agreement will operate as a waiver, nor will any single or partial exercise of such rights, powers, or privileges preclude any further exercise of them or the exercise of any other right, power, or privilege

provided in this Agreement.

34. This Agreement will inure to the benefit of and be binding upon the respective heirs (including family and friends), executors, administrators, successors and assigns, as the case may be, of the Idea Originator and the Consultants.

35. This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or otherwise.

**IN WITNESS WHEREOF** Drew A. Speckman, and Raymone Radi, Cosimo Fabrizio, have duly affixed their signatures under hand and seal on this 28th day of October, 2018.

WITNESS: ADAM SHEHABUDDIN

Drew A. Speckman

WITNESS: JEAN TENG

Raymone Radi, Cosimo Fabrizio

**EXHIBIT C**

# Non-Disclosure, Work Agreement

between

DREW A. SPECKMAN (Founder of RapStudy)

and

ADRIAN W. LEE

Mr. SPECKMAN has retained the help of Mr. LEE regarding a music-based, learning application company, RapStudy.

Any and/or all ideas and/or information discussed in any and/or all related conversations and/or communications—past and/or potentially forthcoming—will remain exclusively between the two parties: SPECKMAN (and/or those involved with RapStudy at present or in the future) and LEE, unless otherwise expressly stated, in writing, by SPECKMAN.

Further, SPECKMAN (and/or those involved with RapStudy at present or in the future) has the ability to use any and/or all ideas and/or information from any and/or all related conversations and/or communications—past and/or potentially forthcoming—for any and/or all RapStudy-related reasons. LEE may not use said ideas, nor said information, for purposes other than those associated with RapStudy, unless otherwise expressly stated, in writing, by SPECKMAN.

Moreover, any and/or all materials produced—past and/or potentially forthcoming—by LEE, and/or discussed with LEE, are the sole property of SPECKMAN, unless otherwise expressly stated, in writing, by SPECKMAN.

**Signed:**

DREW A. SPECKMAN

*Drew A Speckman*

*(Print name)*

*(Signature)*

*November 5, 2019*

*(Date)*

ADRIAN W. LEE

*Adrian W. Lee*

*(Print name)*

*(Signature)*

*November 5, 2019*

*(Date)*

**EXHIBIT D**

# Non-Disclosure, Work Agreement

between

DREW A. SPECKMAN

and

REZA MADHAVAN

Mr. SPECKMAN has retained the help of Mr. MADHAVAN regarding a music-based, learning application company, RapStudy.

Any and/or all ideas and/or information discussed in any and/or all related conversations and/or communications—past and/or potentially forthcoming—will remain exclusively between the two parties: SPECKMAN (and/or those involved with RapStudy at present or in the future) and MADHAVAN, unless otherwise expressly stated, in writing, by SPECKMAN.

Any and/or all materials produced—past and/or potentially forthcoming—by MADHAVAN, and/or discussed with MADHAVAN, are the sole property of SPECKMAN unless otherwise expressly stated, in writing, by SPECKMAN.

Further, SPECKMAN (and/or those involved with RapStudy at present or in the future) have the ability to use any and/or all ideas and/or information from any and/or all related conversations and/or communications—past and/or potentially forthcoming—for any and/or all RapStudy-related reasons. MADHAVAN may not use said ideas, nor said information—nor the aforementioned materials produced—for purposes other than those associated with RapStudy, unless otherwise expressly stated, in writing, by SPECKMAN.

**Signed:**

DREW A. SPECKMAN

*(Print name)*

*(Signature)*

November 12, 2019

*(Date)*

REZA MADHAVAN

*(Print name)*

*(Signature)*

November 12, 2019

*(Date)*