MAURICE D. PESSAH (Pro Hac Vice Pending)
*maurice@pessahgroup.com*
JASON H. SUNSHINE (NY SBN: 5652474)
*jsunshine@pessahgroup.com*
**PESSAH LAW GROUP, PC**
661 N Harper Ave., Suite 208
Los Angeles, CA 90048
Tel. (310) 772-2261

*Attorneys for Plaintiff*
DREW AUSTIN SPECKMAN

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DREW AUSTIN SPECKMAN, in both his personal capacity and as sole incorporator of RapStudy, Inc, a Delaware Corporation;<br><br>Plaintiff.<br><br><br>-against-<br><br><br>COSIMO FABRIZIO, an individual; REZA MADHAVAN, an individual; ADRIAN LEE, an individual, and DOES 1-50, inclusive;<br><br>Defendants. | Civil Action No.  3:21-CV-0602 (DNH/ML)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR: (1) A TEMPORARY RESTRAINING ORDER AND (2) AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>[Filed concurrently with: (1) *Ex Parte* Application for Temporary Restraining Order; (2) An Order to Show Cause Re Preliminary Injunction; (3) Proposed Order (4) Declarations of Drew A. Speckman, Jason H. Sunshine and Maurice D. Pessah; Complaint] |

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................ 5

II.  STATEMENT OF FACTS IN SUPPORT OF INJUNCTIVE RELIEF ................................. 7

   A.   RapStudy Is A Rapidly Growing Tech Start-Up ................................................ 7

      1.   Plaintiff's Founding of RapStudy and Hiring of Defendant Fabrizio as a Consultant .... 8

   B.   Defendants' Baseless Request that Plaintiff Relinquish His Role as CEO ........................ 9

   C.   Defendants' Attempts to Unlawfully Oust Plaintiff from RapStudy and Usurp Control of
   the Company ................................................................................................. 11

      2.   Defendants' Restriction of Plaintiff's Access to the RapStudy Google Drive ............. 11

      3.   Defendants' Removal of Plaintiff from the Company Bank Account .......................... 12

      4.   Defendants' Revocation of Plaintiff's Access to RapStudy's GitHub Repository ........ 12

III. PROCEDURUAL HISTORY .............................................................................. 13

IV.  LEGAL STANDARD ....................................................................................... 13

V.   ARGUMENT .................................................................................................. 14

   A.   Speckman is Likely to Prevail on the Merits of His Claims .................................... 14

      1.   Declaratory Relief ...................................................................................... 14

      2.   Conversion ............................................................................................... 16

      3.   Breach of Contract ..................................................................................... 18

      4.   Computer Fraud and Abuse Act ..................................................................... 19

   D.   Plaintiff Will Suffer Irreparable Harm in the Absence of a TRO ............................. 21

   E.   Balance of Hardships .................................................................................... 22

VI.  CONCLUSION ............................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  598 F.3d 30 (2nd Cir. 2010)………………………………………………………...…………14

*Byrum v. Landreth,*
  566 F.3d 442 (5th Cir. 2009) ...................................................................................... 14

*EF Cultural Travel BV v. Explorica,*
  274 F.3d 577  (1st Cir. 2001).................................................................................... 20

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.,*
  556 F.Supp.2d 1122 (E.D. Cal. 2008)....................................................................... 20

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
  596 F.2d 70 (2d Cir. 1979)......................................................................................... 14

*Pappas v. Tzolis*
  20 N.Y.3d 228 (2012). ............................................................................................... 16

*Paradigm Alliance, Inc. v. Celeritas Technologies, LLC,*
  248 F.R.D. 598 (D. Kan.  2008).................................................................................. 19

*Payment All. Int'l Inc. v. Ferreira,*
  530 F.Supp.2d 477 (S.D.N.Y. 2007).......................................................................... 21

*Rigster.com, Inc. v. Verio, Inc.,*
  126 F.Supp.2d 238  (S.D.N.Y. 2000), aff'd, 356 F.3d 393 (2d Cir. 2004)............... 20

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.,*
  119 F.Supp.2d 1121 (W.D. Wash. 2000)................................................................... 20

*State v. Seventh Regiment Fund,*
  98 N.Y.2d 249 (2002) ................................................................................................ 16

*United States v. Drew,*
  259 F.R.D. 449 (C.D. Cal. 2009) ............................................................................... 19

*United States v. John,*
  597 F.3d 263 (5th Cir. 2010) ..................................................................................... 20

*United States v. Trotter,*

    478 F.3d 918 (8th Cir. 2007) ................................................................................... 19

*University of Texas v. Camenisch,*

    451 U.S. 390 (1981) ................................................................................................ 14

**Statutes**

18 U.S.C. § 1030 .................................................................................................... 13, 19

Delaware Code Title 8, § 107 ............................................................................... 6, 15, 17

**Rules**

Local Rule 65.1……………………………………………………………………………5

Rule 65 of the Federal Rules of Civil Procedure .......................................... 5, 7, 13-14

## MEMORANDUM OF LAW

### I.   PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 65(b) and Local Rule 65.1, Plaintiff Drew A. Speckman ("Speckman" or "Plaintiff"), in both his personal capacity as sole incorporator of RapStudy, Inc., a Delaware Corporation, hereby respectfully seeks: (1) a temporary restraining order against Defendants; and (2) an order to show cause why a preliminary injunction should not issue against Defendants. Due to the circumstances described below, Plaintiff respectfully request that the Court set a hearing for a preliminary injunction "**at the earliest possible time**" pursuant to Fed. R. Civ. P. 65(b)(3).

Plaintiff is the owner, CEO, and sole incorporator of RapStudy, Inc., an educational platform that turns pop songs into teaching tools by linking popular melodies with subject-matter specific lyrics ("RapStudy" or the "Company"). On or about May 11, 2021, Defendants began an unannounced and ongoing campaign to unlawfully restrict Plaintiff's access to his corporate email and Company files, and misappropriate Plaintiff's sensitive business information— information that is subject to confidentiality agreements that each Defendant entered into upon being invited to join the Company by Plaintiff. In the days that followed, and despite Plaintiff's express objections, Defendants doubled down on their efforts to divest Plaintiff of all contact with RapStudy. This includes unlawfully removing his name from the Company bank account he created and capitalized, disabling his access (by changing his access credentials) to the code repositories that house RapStudy's source code and keep the platform functioning.

Defendants, a group of college students who hold no equity, shares or corporate authority in the Company, have refused to engage in any communications with Plaintiff or his counsel, and have not provided any substantive justification for their fraudulent actions, which include hacking Plaintiff's email accounts and Google Drive. Defendants' actions with respect to the Company

bank account are of a particularly egregious, and potentially criminal, nature.

Consequently, Plaintiff has been completely locked out of the Company he created and of which he is the sole incorporator; no Board of Directors has been appointed. This bears emphasis because, as a Delaware Corporation governed by the Delaware General Corporation Law, "the incorporator or incorporators, until the directors are elected, shall manage the affairs of the corporation **and may do whatever is necessary and proper to perfect the organization of the corporation**, etc." *See* DEL. GEN. CORP. § 107 (emphasis added).

Defendants have ignored this, and any semblance of appropriate corporate formality, in favor of essentially ousting the very person who created the Company, kept it running for three years, took the initiative to incorporate it, singlehandedly secured upwards of 20 contracts with various school districts, capitalized the company, and engaged with music industry executives in order to secure licensing and further capitalize the company, among other things.

Defendants now have unfettered and exclusive control over Plaintiff's proprietary data, email, work files, client lists, the Company bank account and every aspect of RapStudy. As a result of Defendants' actions, Plaintiff has been unable to: (1) secure crucial intellectual property rights[1], (2) negotiate contracts with school districts for use of the RapStudy platform, (3) obtain insurance contracts that are vital to the Company's continued operation and mitigation of liability, (4) showcase RapStudy's capabilities in demonstrations with school districts around the country, (5) access and communicate through his Company email, (6) update and manage RapStudy's code, (7) access, maintain, edit and share Company files many of which he owns pursuant to confidentiality agreements that each Defendant has signed, or (8) communicate and engage in

---

[1] Because existing hit songs are an essential component to the platform, securing intellectual property rights is paramount to the Company's continued existence. Without such rights, RapStudy would likely need to discontinue its core activities.

customer service with existing RapStudy clients.  Defendants' actions have caused Plaintiff irreparable harm and will continue to damage Plaintiff should the instant relief be denied. Court intervention is therefore necessary to prevent imminent and irreparable harm to the value of Plaintiff's equity in the Company he worked tirelessly to build.

Specifically, Plaintiff seeks emergency relief to: (1) enjoin Defendants, and those acting in concert with them, from accessing, disrupting or otherwise interfering with Plaintiff's Company email, files, bank account or GitHub account; (2) order Defendants to restore Plaintiff to his *status quo* access to all Company-related files as of May 9, 2021, and (3) restore Plaintiff's access to the Company's Google drive, email accounts, GitHub repository and bank account.

As further elaborated below, Plaintiff can show: (i) that he is likely to succeed on the merits of his claims; and (ii) the possibility of serious irreparable harm. As such, the instant motion is ripe for adjudication forthwith, and a hearing for a preliminary injunction should proceed "at the earliest possible time." Fed. R. Civ. P. 65(b)(3). Although not required to do so under Fed. R. of Civ. P. 65(b)(1)(A)-(B), Plaintiff's counsel gave written notice of the instant application on May 24, 2021 to each Defendant. (Exh. A to Sunshine Decl., ¶ 2)

## II.     STATEMENT OF FACTS IN SUPPORT OF INJUNCTIVE RELIEF

### A.  RapStudy Is A Rapidly Growing Tech Start-Up

Plaintiff is the creator of "RapStudy" an educational platform that turns pop songs into teaching tools by linking popular melodies with educational lyrics. (Declaration of Drew Speckman ["Speckman Decl."] ¶ 2) Lessons on a broad range of topics—from the electoral college to the scientific method—are set to chart-topping hits from artists such as Ariana Grande and Billie Eilish. *Id.*

RapStudy is rapidly expanding. With hundreds of songs in its catalogue and a team of 45 members, RapStudy is a business with enormous growth prospects and wide interest from

investors, school districts, educators, and music industry executives. (Speckman Decl. ¶ 3) The Company has over three hundred educational partners and is used in over 25 schools. *Id.*

1. **Plaintiff's Founding of RapStudy and Hiring of Defendant Fabrizio as a Consultant**

Plaintiff originated the idea for RapStudy in 2018 while enrolled at Cornell University. (Speckman Decl. ¶ 4) In or around October of 2018, Plaintiff approached Defendant Cosimo Fabrizio ("Fabrizio"), a fellow, younger Cornell student, and invited him to join RapStudy as a consultant. (Speckman Decl. ¶ 5) On October 28, 2018, Fabrizio signed a non-disclosure agreement ("Fabrizio NDA") identifying Plaintiff as the "Idea Originator" for RapStudy and Fabrizio as a "Consultant." *Id.* The Fabrizio NDA designates Plaintiff as the exclusive owner of all information related to the business, including, *inter alia*, proprietary computer code, business processes and customer information, intellectual property, service marks, marketing and development information, and accounting information. (Exh. B to Speckman Decl. ¶¶ 5-6) The NDA prohibits Fabrizio from using RapStudy information "for any purpose that might be directly or indirectly detrimental to the Idea Originator [Plaintiff]." (Exhibit. B to Speckman Decl. ¶¶ 5-6) The NDA further prohibits Fabrizio from "interfer[ing] or disrupt[ing] the Idea Originator's relationship with their employees and contractors[.]," and provides that any breach "**would cause irreparable injury to the Idea Originator**[.]" *Id.* (emphasis added)

Between November 5, 2019 and November 12, 2019, Plaintiff executed similar non-disclosure agreements with Defendants Madhavan and Lee, who were hired by Plaintiff as interns at RapStudy. (Speckman Decl. ¶ 7) These agreements designate Plaintiff as the exclusive owner of all RapStudy property and provide, inter alia, that Plaintiff may "use any and/or all ideas and/or information from any and/or all related conversations and/or communications—past and/or potentially forthcoming—for any and/or all RapStudy-related reasons." (Exhibits C-D to

Speckman Decl. ¶ 7)

Importantly, the agreements signed by Defendant Fabrizio explicitly provide that an "**injunction restraining the Consultants, any of the Consultants' personnel, and any agents of the Consultants, from directly or indirectly committing or engaging in any act restricted by this Agreement**" is the appropriate remedy for the wrongs committed here. (Exh. B to Speckman Decl. ¶¶ 5-6)

Plaintiff filed a Certificate of Incorporation for RapStudy with the Delaware Secretary of State on November 21, 2019, using his own funds to pay the filing fee. *Id.* The Certificate of Incorporation established "RapStudy, Inc." as a Delaware corporation, with Plaintiff as RapStudy's "sole incorporator." (Exhibit A to Speckman Decl. ¶ 4) Apart from this Certificate, no other RapStudy documents have been filed with Delaware's (or any state's) Secretary of State. No Board of Directors has been appointed to date, no Bylaws have been created and no shareholder agreements have been executed. (Speckman Decl. ¶ 4)

Plaintiff is the "originator" of the business and has taken the lead on every major decision since its founding. (Speckman Decl. ¶ 5) As CEO, Plaintiff is responsible for negotiating contracts with school districts, managing corporate administration, supervising personnel and independent contractors, and engaging executives from the music industry to secure counsel, licensing, investment, and partnership. *Id.*

B. **Defendants' Baseless Request that Plaintiff Relinquish His Role as CEO**

In the Fall of 2020, Plaintiff was involved in a brief, consensual relationship with RapStudy team member, Claire Choi. (Speckman Decl. ¶ 8) As acknowledged in an unofficial, May 3, 2021, "Notice of Misconduct" that does not even bear the Company's insignia, Ms. Choi **does not deny** that the relationship was consensual. (Exh. E to Speckman Decl., ¶ 9) ("On Sunday, April 25, Claire [Choi] called Cosimo [Fabrizio] to notify him that she and Drew [Speckman] had

a consensual romantic relationship in the early Fall 2020") Choi disclosed the relationship to Fabrizio on April 25, 2021, **seven months** after the relationship ended,  and then subsequently to Defendants Adrian Lee, Reza Madhavan in a series of conversations between April 25 and 26, 2021. (Speckman Decl., ¶ 8)

The "Notice of Misconduct" was signed by Defendants Adrian Lee, Reza Madhavan, and Cosimo Fabrizio (collectively, the "Signatories"). The notice, which appears to have been created by Defendants without any consultation or regard to the Delaware Corporation Law, alleged that Plaintiff: (1) failed to "separate his work life and private life", (2) exercised "poor judgment", and (3) "violated Defendants' trust." (Speckman Decl. ¶ 9) Neither the "Notice of Misconduct" nor Choi alleged any unlawful conduct on the part of Plaintiff. (Exhibit E to Speckman Decl. ¶¶ 9-10)

The Signatories demanded that Plaintiff take a leave of absence from RapStudy until the arbitrary date of August 8, 2021, and indicated, without more, that they were "not comfortable" with Plaintiff remaining CEO upon his return. *Id.* The Signatories did not articulate any legal basis for their request that Plaintiff take a leave of absence and step down as CEO. (Exh. E to Speckman Decl. ¶ 9) To date, no neutral investigation has been conducted into Plaintiff's consensual relationship with Choi and no evidence of wrongdoing has been furnished. (Speckman Decl. ¶ 10) There is, however, evidence that Choi and Defendants Fabrizio and Madhavan regularly socialize and enjoy alcoholic beverages. Below are true and correct copies of recent posts and tributes from Defendant Choi's Instagram account:



Ms. Choi's Instagram identifier. (May 16, 2021)

**Defendant Madhavan**



Defendant Choi's Instagram tribute to **Defendant Fabrizio** for his "Birthday." (May 10, 2021, just one day before Plaintiff's ouster)

(*See* Exhs. A, B to Declaration of Maurice D. Pessah ["Pessah Decl."] ¶ 2)

### C. <u>Defendants' Attempts to Unlawfully Oust Plaintiff from RapStudy and Usurp Control of the Company</u>

### 2. **Defendants' Restriction of Plaintiff's Access to the RapStudy Google Drive**

On May 11, 2021, Plaintiff received a Google alert that his RapStudy Gmail account and Google Drive passwords had been changed, along with the recovery email. (Exh. F to Speckman Decl. ¶ 11) Plaintiff was thus locked out of his work email and lost access to the Google Drive in which his RapStudy related files are stored. Plaintiff is the author of many of the files, making them subject to the NDAs that Defendants signed. (*Id.*; *see also* Exhs. B-D to Speckman Decl., ¶¶ 5, 7)

Without access to such files and his company e-mail, Plaintiff's ability to discharge his duties as sole incorporator and CEO is significantly disrupted. The result is that RapStudy cannot be managed by its CEO, Sole Incorporator and Founder.

Defendants have administrator-level access to the Company's accounts. (Speckman Decl. ¶ 12) No other individual holds such access, and such access would be needed to effectuate the change. *Id.* Additionally, Defendants have been using RapStudy email addresses to purportedly

conduct affairs on behalf of the Company, something they are not authorized to do. *Id.*

### 3.  Defendants' Removal of Plaintiff from the Company Bank Account

On August 3, 2020, Plaintiff opened a corporate checking account for RapStudy at Tompkins Trust Company and deposited his personal funds (the "Bank Account"). (Exh. H to Speckman Decl. ¶ 13) The checking account was registered to RapStudy and was signed exclusively by Plaintiff as CEO. *Id.*  Plaintiff also opened a bank card under the corporate account, again in his capacity as CEO and sole incorporator. *Id.* All the paperwork lists Plaintiff as account holder and includes his signature and mailing address. (*See e.g.* Exh. H to Speckman Decl. ¶ 13). On September 4, 2021, Plaintiff added Defendant Fabrizio as a joint signatory to the Bank Account. *Id.*

On May 14, 2021 at around 4:40 pm EST, Plaintiff attempted to access the Bank Account and received an error message that his login information was incorrect. (Speckman Decl. ¶ 14) Plaintiff then called the Ithaca, New York branch of the bank and was told that his name was not on the account. Later that day, Plaintiff called the Tompkins Trust Digital Banking Assistance line and asked for more information regarding his restricted access. *Id.* Once again, Plaintiff was told he was not on the account. The bank representative refused to provide any further information. *Id*. It was clear that Defendant Fabrizio, the only other signatory on the Account, had taken unlawful and unauthorized step to manipulate bank documents and impermissibly disrupt and disable Plaintiff's access to the Bank Account. *Id.*

### 4.  Defendants' Revocation of Plaintiff's Access to RapStudy's GitHub Repository

Defendants took further action to cut Plaintiff out of the Company by revoking his access to the RapStudy GitHub repositories containing the platform's source code. (Exhibit I to

Speckman Decl. ¶ 15) GitHub is a data repository that houses the source code upon which the Company's platform operates. *Id*. On May 11, 2021, Plaintiff received an email from GitHub with the subject line "You've been removed from the @rapstudyorganization[.]" *Id*. The body of the email reads, in its entirety, "You've been removed as a collaborator on rapstudy's repositories. / You no longer have access to the following repositories: / rapstudy.com/rapstudy-web[.]" *Id.*

As a result of Defendants' actions, Plaintiff has been unable to: (1) secure crucial intellectual property rights, (2) negotiate contracts with school districts for use of the RapStudy platform, (3) obtain insurance contracts that are vital to the Company's continued operation and mitigation of liability, (4) showcase RapStudy's capabilities in demonstrations with school districts around the country, (5) access and communicate through his Company email, (6) update and manage RapStudy's code, (7) access, maintain, edit and share Company files many of which he owns pursuant to confidentiality agreements that each Defendant has signed, or (8) communicate and engage in customer service with existing RapStudy clients.  (Speckman Decl. ¶ 16)  Defendants' actions have also stunted RapStudy's active user growth, delayed the release of 20-50 new songs that would otherwise have been commissioned, and upended negotiations with school districts interested in contracting with RapStudy. *Id.*

## III.    PROCEDURUAL HISTORY

Plaintiff initiated this action on May 24, 2021 by filing a complaint with claims for: Declaratory Relief, Violation of Computer Fraud and Abuse Act (28 U.S.C. § 1030), Conversion, and Breach of Contract. The instant Temporary Restraining Order was filed simultaneously with the Complaint.

## IV.    LEGAL STANDARD

Injunctive relief under Rule 65 of the Federal Rules of Civil Procedure is appropriate where the party seeking the injunction shows "(a) irreparable harm and (b) either (1) likelihood of success

on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd*, 598 F.3d 30, 35 (2d Cir. 2010) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). The standard for an entry of a TRO is essentially the same as for a preliminary injunction. *Andino v. Fischer*, 555 F.Supp.2d 418, 419 (S.D.N.Y. 2008). The main differences are, first, that a TRO is often granted *ex parte* but thereafter has a limited lifespan and, second, that even where there is a subsequent adversarial hearing on the TRO, it typically occurs before there has been extensive discovery. *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016)

A preliminary injunction is customarily granted on the basis of procedures less formal and evidence less complete than at trial. Therefore, the moving party **need not prove his or her case in full** at a preliminary injunction hearing. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009) (The plaintiff's evidence need not meet summary judgment standard to warrant injunctive relief).

In the Second Circuit, injunctive relief is appropriate when "**the costs outweigh the benefits of not granting the injunction**," even if it cannot be established that the plaintiff is more likely than not to prevail on his or her claims. *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2nd Cir. 2010) (emphasis added).

## V.     ARGUMENT

### A.   Speckman is Likely to Prevail on the Merits of His Claims

#### 1.   Declaratory Relief

Plaintiff is highly likely to prevail on his claim for a declaratory judgment establishing that he is the owner, CEO and sole incorporator of RapStudy.

As discussed, Plaintiff is listed as the sole incorporator on RapStudy's Certificate of Incorporation, the **only** document filed with the Delaware Secretary of State. (Exh. A to Speckman Decl. ¶ 4) Further, and as elaborated *infra*, each Defendant signed a non-disclosure agreement acknowledging Plaintiff as the **exclusive owner** of all RapStudy information and materials. (Exhs. B, C, D to Speckman Decl. ¶¶ 5, 7)

Not only is Plaintiff RapStudy's founder, CEO, and sole incorporator, but there is no legal basis whatsoever for Defendants to oust Plaintiff from the Company or usurp corporate control. Indeed, Delaware Code Title 8, § 107 provides, in pertinent part:

> **[T]he incorporator or incorporators**, until the directors are elected, **shall manage the affairs of the corporation and may do whatever is necessary and proper to perfect the organization of the corporation[.]**

Del. Code, Tit. 8, § 107 (emphasis added).

Since no directors have been elected and no bylaws have been adopted, Plaintiff has **exclusive control** over the corporation's affairs as a matter of Delaware law, and recognized procedures for corporate governance. Such control cannot be usurped on a generalized and uncorroborated theory that Plaintiff engaged in "misconduct," particularly since no investigation has been conducted into this alleged misconduct, and the accuser has acknowledged the purely consensual nature of the relationship.  Moreover, the Signatories of the "Notice of Misconduct" appear to all be in collusion and are engaged in relationships that extend beyond their professional affiliations with the Company. (Exhs. A, B to Pessah Decl., ¶ 2; Speckman Decl., ¶ 17)

Having no law to lean on, Defendants sent the "Notice of Misconduct," a hopelessly vague document, devoid of the Company's insignia and with generalized grievances about Plaintiff like his alleged "inability to separate work and personal lives [*sic*]," "poor judgment," and "violation of trust" as grounds for their outlandish request that Plaintiff step down as CEO and "relinquish"

his duties. (Exh. E, pp. 1-2, to Speckman Decl. ¶¶ 9-10) When Defendants locked Plaintiff out of the RapStudy Google Drive only eight days later, they did not even attempt to justify their actions. To date, Defendants have never alleged (nor can they allege) that Plaintiff engaged in any unlawful conduct.

In short, Defendants recognized RapStudy's potential for exponential growth and decided to seize control of a burgeoning business. Defendants' actions are not only clear violations of state and federal laws (discussed *infra* at Sections V(A)(2)-(4)) but do nothing to change the ownership and leadership structure of RapStudy. Plaintiff is therefore likely to secure a declaratory judgment affirming his role as owner, CEO, and sole incorporator of the Company.

### 2. Conversion

Under New York law, conversion is defined as the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *State v. Seventh Regiment Fund*, 98 N.Y.2d 249 (2002). There are two key elements of conversion: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 20 N.Y.3d 228 (2012).

Plaintiff will undoubtedly succeed in showing Defendants' conversion of his interest in the Company, and its related property. As discussed, all Defendants have acknowledged, in a binding written instrument, Plaintiff's **exclusive ownership** of Company property and materials including "customer information," "intellectual property," "marketing development information," "business operations," "production information," "proprietary computer code," and "accounting information." (Exhs. B, C, and D to Speckman Decl. ¶¶ 5, 7) Plaintiff is also listed as the sole incorporator of RapStudy on the Certificate of Incorporation, the **only** RapStudy

document filed with the Secretary of State. (Exh A to Speckman Decl. ¶ 4) Thus, the first prong of the of the conversion analysis—Plaintiff's possessory interest in the Company—is easily met.

Second, it is undeniable that Defendants have interfered with Plaintiff's possession of the property in an unlawful derogation of Plaintiff's rights. On May 11, 2021, Plaintiff was locked out of the RapStudy Google drive and GitHub repository without cause or notice. (Speckman Decl. ¶¶ 11, 15) It requires administrator-level credentials to restrict a user's access to such accounts, and Defendants are the **only** individuals (apart from Plaintiff) with administrator access. (Speckman Decl. ¶ 12) Notably, these lockouts occurred only eight days after Defendants sent Plaintiff the Notice of Misconduct. Defendants thus cannot reasonably dispute that they are responsible for restricting Plaintiff's access to the Google drive and GibHub repository.

Plaintiff was also removed from the RapStudy corporate checking account, which he opened under his own name and with funds he personally contributed to RapStudy's capital. (Speckman Decl. ¶¶ 13-14) The **only** other individual added to the account was Defendant Fabrizio. (Speckman Decl. ¶ 13) Since Fabrizio was the only other signatory on the Bank Account, there is a strong likelihood that Plaintiff will establish Fabrizio's responsibility for interfering with the Bank Account and the funds therein. Here too, Plaintiff's role as the sole incorporator of RapStudy will buttress his authority to act in that capacity to "manage the affairs of the corporation" and "**do whatever is necessary and proper to perfect the organization of the corporation[.]**" Del. Code, Tit. 8, § 107. This includes managing the Company's finances and exercising authority over corporate funds until such time a board of directors is appointed.

Since Plaintiff can show that Defendants interfered with his rightful possession of RapStudy, including proprietary data and funds, Plaintiff is likely to prevail on his claim for conversion of the Company.

### 3.  Breach of Contract

Prior to their employment with RapStudy, each Defendant signed a non-disclosure agreement acknowledging Plaintiff's exclusive ownership of all ideas, information and materials relating to RapStudy. (Exhs. B, C, and D to Speckman Decl. ¶¶ 5-7) Thus, Plaintiff will easily establish that Defendants breached their contracts by blocking Plaintiff's access to Company property.

In addition to acknowledging Plaintiff's exclusive ownership of all RapStudy information and materials, the NDAs limit each Defendant's use of RapStudy information, reserve rights to Plaintiff, and prescribe remedies as follows:

- Plaintiff's NDA with Defendant Fabrizio prohibits Fabrizio from using any RapStudy information "for any purpose that might be directly or indirectly detrimental to the Idea Originator [Plaintiff]." The NDA further prohibits Fabrizio from "interfer[ing] or disrupt[ing] the Idea Originator's [Plaintiff's] relationship with their employees and contractors[.]" (Exh. B, ¶ 9 to Speckman Decl, ¶ 6) Moreover, the NDA provides that any breach "would cause irreparable injury to the Idea Originator [Plaintiff]," and "the Idea Originator [Plaintiff] is entitled to…**an injunction restraining the Consultants, any of the Consultants' personnel, and any agents of the Consultants, from directly or indirectly committing or engaging in any act restricted by this Agreement**[.]" (Exh. B, ¶ 15, Speckman Decl. ¶ 6) (emphasis added)

- Plaintiff's NDA with Defendants Madhavan and Lee acknowledge Plaintiff's right to "use any and/or all ideas and/or information from any and/or all related conversations and/or communications—past and/or potentially forthcoming—for any and/or all RapStudy-related reasons." (Exh. C-D, Speckman Decl. ¶ 7)

Defendants violated the express terms of the NDAs by shutting Plaintiff out of the RapStudy Google and GitHub accounts in a flagrant attempt to usurp control of the Company. Moreover, Defendant Fabrizio has agreed in writing that a breach would cause "**irreparable injury**" warranting injunctive relief. (Exh. B to Speckman Decl., ¶ 6) Thus, not only will Plaintiff prevail on his breach of contract claims, but Fabrizio already agreed in writing that an injunction is the appropriate remedy.

### 4. Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), imposes liability upon any individual who "knowingly and with an intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value[.]" 18 U.S.C. § 1030(a)(4).

The term "protected computer" has been interpreted broadly. Indeed, courts routinely hold that any computer connected to the internet is sufficient to meet this element. *See*, *e.g.*, *United States v. Drew*, 259 F.R.D. 449, 457 (C.D. Cal. 2009) ("[T]he latter two elements of the section 1030(a)(2)(C) crime [obtaining information from a protected computer] will always be met when an individual using a computer contacts or communicates with an Internet website."); *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) ("No additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated.") (internal citations omitted); *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, 248 F.R.D. 598, 602 (D. Kan. 1. Computer Fraud and Abuse Act 5 2008) ("As a practical matter, a computer providing a 'web-based' application accessible through the internet would satisfy the 'interstate communication' requirement.")

Similarly, the term "intend to defraud" has been applied broadly, with courts holding that

plaintiffs need not plead the elements of common law fraud to plead a viable claim under the CFAA. *See Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121, 1123 (W.D. Wash. 2000) (holding that "fraud" under the CFAA simply means "wrongdoing" and upholding CFAA claim where plaintiff alleged that defendant participated in "dishonest methods to obtain the plaintiff's secret information."); *see also Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F.Supp.2d 1122, 1131 (E.D. Cal. 2008) (citing *Shurgard*).

Thus, Plaintiff's CFAA claim hinges on whether Plaintiff can establish that Defendants "exceeded authorized access" within the meaning of the statute. Plaintiff will easily meet this burden. Where the authorizing party expressly prohibits a defendant from accessing the computer for an improper purpose, the defendant "exceeds authorized access" under the CFAA. *See*, *e.g.*, *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010) ("Access to a computer and data that can be obtained from that access may be exceeded if the purposes for which the access has been given are exceeded."); *see also Rigster.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 242-43, 248 (S.D.N.Y. 2000), *aff'd*, 356 F.3d 393 (2d Cir. 2004) (in order to submit query to website, users must agree not to use responsive data for direct marketing activities).

Even in the absence of an express limitation on computer usage, a defendant nevertheless "exceeds authorized access" where the authorizing party has prohibited the defendant from using data for certain purposes. *See EF Cultural Travel BV v. Explorica*, 274 F.3d 577, 582-83 (1st Cir. 2001) (defendant exceeded authorized access by disclosing computer data in violation of confidentiality agreement).

Here, as discussed above, Defendants signed written agreements acknowledging Plaintiff's **exclusive ownership** of RapStudy property and **limiting Defendants' use of such property**. (*See* Exhs. B, C, D to Speckman Decl. ¶¶ 5, 7) Nevertheless, Defendants unlawfully

locked Plaintiff out of the Google drive and GitHub repository, blocking Plaintiff's access to information he owns in brazen violations of the non-disclosure agreements. Since Defendants were contractually prohibited from engaging in such acts, Defendants "exceed[ed] authorized access" within the meaning of the CFAA. Thus, Plaintiff will prevail on his CFAA claim.

**B.  Plaintiff Will Suffer Irreparable Harm in the Absence of a TRO**

Courts in this Circuit have long acknowledged that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it were not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be granted." *Payment All. Int'l Inc. v. Ferreira*, 530 F.Supp.2d 477, 480 (S.D.N.Y. 2007) (citation omitted).

In this case, Defendants have restricted Plaintiff's access to his RapStudy email, as well as RapStudy's Google drive and GitHub accounts, in addition to RapStudy's corporate checking account. If Defendants do not return Plaintiff's access to the Company drives, files, intellectual property, and bank account, Plaintiff will suffer irreparable harm as the sole incorporator and owner of RapStudy.

Since being unlawfully locked out of RapStudy, Plaintiff has been unable to: (1) secure crucial intellectual property rights, (2) negotiate contracts with school districts for use of the RapStudy platform, (3) obtain insurance contracts that are vital to the Company's continued operation and mitigation of liability, (4) showcase RapStudy's capabilities in demonstrations with school districts around the country, (5) access and communicate through his Company email, (6) update and manage RapStudy's code, (7) access, maintain, edit and share Company files many of which he owns pursuant to confidentiality agreements that each Defendant has signed, or (8) communicate and engage in customer service with existing RapStudy clients. All of RapStudy's operations are now under the control of Defendants, **none of whom have any business**

**management experience**, much less any authority to interfere with Plaintiff's administration of the Company as sole incorporator. (Speckman Decl. ¶ 16) Defendants' failure to properly run the Company will cause severe and irreparable damage to RapStudy's reputation and goodwill. Indeed, as of this filing, Plaintiff has been unable to respond to dozens of emails from vendors, insurers, current and potential clients, and other third parties related to RapStudy affairs. (Speckman Decl. ¶ 16) Plaintiff cannot showcase RapStudy's capabilities in meetings with potential clients, nor engage in any form of customer service with existing customers. With each passing day, RapStudy will lose business as its clients (erroneously) assume that Plaintiff has abandoned his duties as CEO.

Plaintiff, as RapStudy's owner and sole incorporator, will suffer irreparable harm as a result of Defendants' unlawful control of the Company. After devoting three years of his life to the Company, Plaintiff will be forced to watch his ownership interest evaporate as Defendants run RapStudy into the ground. Meanwhile, Defendants—who have no equity in the Company—will continue to mismanage RapStudy while suffering no consequences for their actions.

For these reasons, Plaintiff will suffer severe irreparable harm in the absence of equitable relief. Plaintiff therefore requests that the Court issue a temporary restraining order restoring his access to the RapStudy Google drive, GitHub repository and Bank Account, and prohibiting Defendants, and all those acting in concert with them, from further disrupting Plaitniff's access to vital Company funds and information. (*See* Proposed Order filed concurrently herewith)

### C.  **Balance of Hardships**

The balance of hardships militates strongly in favor of issuing a temporary restraining order. As a result of Defendants' complete and utter disregard for Plaintiff's rights as founder, CEO, sole incorporator, and owner, RapStudy has been thrust into a state of utter chaos. If an injunction is not issued, Defendants will continue to mismanage the Company while unlawfully

exploiting Plaintiff's property. Issuing the injunction will merely require Defendants to return Plaintiff's access the RapStudy Google drive, bank account, and GitHub repository. Defendants never had a right to restrict Plaintiff from these accounts in the first place, and reinstating Plaintiff's access will result in no harm or burden to Defendants. Conversely, Defendant's continued mismanagement and unlawful control of RapStudy will ruin the Company, rendering Plaintiff's equity valueless and destroying the business he worked tirelessly to build.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff is likely to prevail on his claims against Defendants and will suffer irreparable harm if immediate relief is not granted. Plaintiff therefore requests that the Court (1) issue a temporary restraining order requiring Defendants to restore Plaintiff's access to the RapStudy Google drive, GitHub repository and bank account, and (2) set an OSC re preliminary injunction for the same relief.


Dated: May 24, 2021                     PESSAH LAW GROUP, PC



                                        By:    */s/Jason Sunshine*
                                               Maurice D. Pessah
                                               Jason Sunshine
                                               Attorneys for Plaintiff
                                               DREW AUSTIN SPECKMAN